[No. B195866. Second Dist., Div. Six. Dec. 6, 2007.]

THE PEOPLE, Plaintiff and Appellant, v.
ESTHER TORRES ANAYA, Defendant and Respondent.

■■■■■■■■■■■■

COUNSEL

Gregory D. Totten, District Attorney, and Michelle J. Contois, Deputy District Attorney, for Plaintiff and Appellant.

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

**PERREN, J.**—Respondent Esther Torres Anaya was released on bail pending her trial for embezzling money from the elderly over whom she exercised guardianship authority on behalf of the County of Ventura. Conditions of her release included electronic monitoring and some restriction on her freedom of movement. Anaya pled guilty to the charges and was sentenced to prison. She was awarded 434 days of presentence custody credit for the time she was released on bail. The district attorney appeals, asserting that the trial court erred in giving her the credits. We agree and reverse with directions to the trial court to amend the abstract of judgment to delete 434 days of presentence credit.

*FACTUAL AND PROCEDURAL BACKGROUND*

Anaya was charged in a second amended complaint with 47 counts of theft from an elder or dependent adult (Pen. Code, § 368, subd. (d)) (counts 1–47); embezzlement by a public officer (Pen. Code, § 504) (count 48); fraudulent tax filings (Rev. & Tax. Code, §§ 19705, subd. (a)(1), 19721, subd. (a)(1)) (counts 49–52); and a special allegation that the total property value taken exceeded $50,000 (Pen. Code, § 12022.6, subd. (a)(1)).

Anaya posted bail on September 30, 2005. On October 5, 2005, the court granted the district attorney's request to place her on electronic monitoring as a further condition of her release. In addition, she was required to sign a "Ventura County Probation Agency Community Confinement Release Contract." Anaya agreed to make all court appearances, obey all laws, and not possess weapons. She further agreed not to tamper with the electronic monitoring equipment and to return it when done. The only restrictions on her liberty were that (1) she answer the door for community confinement staff

(CCS) and limit phone usage so that CCS could reach her by phone, (2) remain in Ventura County, and (3) contact CCS from her home telephone daily at noon and 6:00 p.m.

At the bottom of the form, immediately preceding Anaya's signature is this admonition: "I understand and promise to obey the above release conditions. I understand that the probation officer or program staff may visit my home, school, work site, day or evening, without notice. I understand that a violation of any condition may result in my return to custody and/or additional Court action, and that I may be charged with escape if I leave home while on electronic monitoring." The record reflects no violations of the contract.

On January 12, 2006, Anaya pled guilty to all counts of the second amended complaint and admitted the special allegation. On December 12, 2006, the court dismissed count 35 and sentenced her to an aggregate determinate term of five years four months in the Department of Corrections and Rehabilitation.[1] For the time she spent in custody prior to her release on bail, she was awarded 158 days actual and 78 days of good conduct credits. Over the district attorney's objection, the court awarded her an additional 434 days of credit pursuant to Penal Code section 1203.016 for the days she was subject to the electronic monitoring agreement.

The sole issue on appeal is whether Anaya is entitled to custody credits against her sentence for time spent while subject to the electronic monitoring agreement.

## DISCUSSION

The issue involves application of a statute to undisputed facts and is subject to our independent review. (*People v. Cromer* (2001) 24 Cal.4th 889, 894 [103 Cal.Rptr.2d 23, 15 P.3d 243].)

In giving Anaya custody credits for the time she spent wearing an electronic home monitoring device, the trial court relied on Penal Code section 1203.016.[2] Section 1203.016 authorizes a low risk or minimum security offender committed to a county jail to participate in a home detention program if approved by the county or the court. (§ 1203.016, subds. (a), (d).)

[1] Count 27 charged a violation of Penal Code section 368, subdivision (d) as a misdemeanor. The transcript of the sentencing proceedings show that the trial judge imposed a sentence of one year in the county jail for this offense and ordered that it run concurrent with the state prison commitment. Neither the court minutes nor the abstract of judgment reflects this. We will direct the abstract be amended.

[2] All further statutory references are to the Penal Code.

That statute does not authorize a court to award presentence custody credits. It is not addressed to bail and, by its terms, has no application here. The statute authorizing the award of custody credits is section 2900.5.[3]

The current version of section 2900.5, subdivision (a), applicable in 2005 and 2006 when Anaya was subject to the electronic monitoring agreement, states in part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, . . . shall be credited upon his or her term of imprisonment . . . ."

■ Anaya asserts that the trial court correctly gave her credit for time she spent in home detention because the list of facilities for which presentence credit may be awarded in section 2900.5, subdivision (a) is preceded by the language "including, but not limited to." Anaya's argument that this language indicates the list is nonexclusive is correct. The courts have construed the phrase "including, but not limited to," to be a term of enlargement. (See, e.g., *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1101 [17 Cal.Rptr.2d 594, 847 P.2d 560]; *People v. Gonzales* (2004) 116 Cal.App.4th 1405, 1414 [11 Cal.Rptr.3d 434]; *City of Santa Ana v. City of Garden Grove* (1979) 100 Cal.App.3d 521, 527 [160 Cal.Rptr. 907].)

■ Nonetheless, Anaya's contention is not well taken for two reasons. First, her argument does not take into account the fact that the Legislature amended the statute to delete "home detention programs" from section 2900.5, subdivision (a). In construing the statute, we cannot ignore this change. " 'It is ordinarily to be presumed that the Legislature by deleting an express provision of a statute intended a substantial change in the law.' " (*People v. Dillon* (1983) 34 Cal.3d 441, 467 [194 Cal.Rptr. 390, 668 P.2d 697].)

■ In addition, the phrase "including, but not limited to," referred only to those facilities preceding "or home detention programs." (See, e.g., *St. Cyr v. Workers' Comp. Appeals Bd.* (1987) 196 Cal.App.3d 468, 472 [243 Cal.Rptr. 1]

---

[3] In 1991, section 2900.5, former subdivision (a) was amended to add "home detention programs" to those forms of custody for which a defendant would be entitled to presentence credit. (*People v. Lapaille* (1993) 15 Cal.App.4th 1159, 1165 [19 Cal.Rptr.2d 390].) This term was intended to refer to electronic home detention programs authorized by section 1203.016. (15 Cal.App.4th at pp. 1169–1170.) The inclusion of "home detention programs" in section 2900.5 was subject to a sunset clause. (Stats. 1994, ch. 770, §§ 6–7, p. 3853.) On January 1, 1999, the current version of section 2900.5, subdivision (a) took effect. Section 2900.5 no longer includes "home detention programs" among those forms of custody for which a defendant is entitled to presentence credit.

[use of disjunctive "or" in a statute indicates intent to designate alternative or separate categories].) Then, as now, the Legislature acknowledged the difference between home detention programs and those programs requiring more restrictive custody.

At the time Anaya was in the home detention program, section 2900.5, subdivision (a) did not authorize the award of presentence custody credits. For this reason, Anaya's argument that her home detention program was as, if not more, restrictive than other types of custody for which credits have been awarded also is without merit. Moreover, the electronic monitoring agreement did not restrict her movements. Except for being at home to make a phone call once a day, Anaya was free to go anywhere in the county at any time.[4]

Anaya also argues that the express mention of "home detention program[s]" in subdivision (f) of section 2900.5 fills the gap left by the deletion of "home detention programs" in subdivision (a). We disagree.

Subdivision (f) of section 2900.5 states: "If a defendant serves time in a camp, work furlough facility, halfway house, rehabilitation facility, hospital, juvenile detention facility, similar residential facility, or *home detention program* in lieu of imprisonment in a county jail, and the statute under which the defendant is sentenced requires a mandatory minimum period of time in jail, the time spent in these facilities or programs shall qualify as mandatory time in jail." (Italics added.)

Subdivision (f) of section 2900.5 relates only to time served by a defendant as part of a sentence, not time while awaiting trial. The subdivision provides, "If a defendant *serves time in* [certain facilities] in lieu of imprisonment in a county jail . . . ." (*Ibid.*, italics added.) A defendant cannot "serve time" until sentencing. (Cf. § 2900.5, subd. (a), which awards credit "when the defendant has been in custody" pretrial.) In addition, subdivision (f) relates only to credit against mandatory minimum jail sentences, not any other type of credit. "If a defendant serves time in [certain facilities] in lieu of imprisonment in a county jail, *and* the statute under which the defendant is sentenced requires a mandatory minimum period of time in jail, the time spent in these facilities or programs *shall qualify as mandatory time in jail.*"

---

[4] The lynchpin for the receipt of custody credits is that one be "in custody." Citing *People v. Reinertson* (1986) 178 Cal.App.3d 320, 326 [223 Cal.Rptr. 670], Anaya urges in her petition for rehearing that we have too narrowly defined the term. Though the term "in custody" has never been precisely defined, it is evident that Anaya was not "in custody" for the purpose of receiving time credit. (*People v. Ambrose* (1992) 7 Cal.App.4th 1917, 1921–1922 [9 Cal.Rptr.2d 812]; see *People v. Richter* (2005) 128 Cal.App.4th 575, 579–580 [27 Cal.Rptr.3d 198] [time spent in work release program in lieu of confinement does not entitle the participant to custody credit].)

(*Id.*, subd. (f), italics added.) The subdivision is not triggered unless a defendant both serves time *and* is sentenced under a statute requiring mandatory minimum jail time. Once the subdivision applies, it provides only that the time served qualifies as mandatory jail time, not any other time. (See *People v. Lapaille, supra*, 15 Cal.App.4th 1159, 1165–1166 [subd. (f) provides that "convicted prisoners enrolled in alternative sentencing programs, including 'home detention programs,' [will] get credit against sentences for offenses which require[] that offenders serve a mandatory minimum period of time in jail"].)

We direct the trial court to amend the abstract of judgment both to eliminate 434 days of presentence custody credits and to show the sentence of one year in county jail on count 27. In all other respects, the judgment is affirmed.

Gilbert, P. J., and Coffee, J., concurred.

A petition for a rehearing was denied January 7, 2008, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 9, 2008, S159950.