Filed 2/18/15  P. v. Kaufman CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOEL DAVID KAUFMAN,<br><br>    Defendant and Appellant. | A141744<br><br>(Contra Costa County<br>Super. Ct. No. 01-161889-1) |

Defendant Joel David Kaufman participated in an electronic monitoring program while awaiting trial on sex crimes charges.  After he entered a plea agreement, the trial court granted defendant custody credits with respect to his period of home detention.  The district attorney contends the grant was erroneous.  We affirm.

## I.  BACKGROUND

Defendant was charged in an amended complaint, filed April 23, 2013, with five felony and three misdemeanor counts involving sex crimes against minors.  A fourth misdemeanor charge was added later.  He ultimately pleaded guilty to six of the charges and was sentenced to a term of 10 years 8 months.

Following the filing of the original complaint in March 2013, defendant surrendered and posted bail.  In April 2013, the prosecution discovered additional victims, filed the amended complaint, and moved to revoke or increase defendant's bail.  As a condition of continued release on bail, defendant was required to participate in the county's electronic home monitoring program.  The program required him to wear an

electronic monitor at all times, and he was subject to arrest if he violated the terms of the program.

At the time of sentencing, defendant sought custody credits for his time spent in the home monitoring program. The parties stipulated to the following description of the program:

"It is the type of program that actually tracks the participant, not just sounds an alarm if he leaves a certain area.

"As part of that program he was ordered to abstain from the use of alcohol and drugs, and to submit to . . . alcohol and blood testing.

"He was to remain within the confines of his house unless given specific permission to leave the home.

"He had to request permission to confer with his lawyer.

"He had to request permission to visit his doctor.

"He had to request permission to attend therapy.

"He had to request permission to attend his business. In this case, he got permission to tend to his business once or twice a week, for about two hours on each occasion.

"All the exceptions were in the discretion of the Sheriff's supervisor and had to be pre-approved.

"And he had to meet face-to-face with the supervisor once per week."[1]

The trial court granted the requested credits.

## II. DISCUSSION

The district attorney contends the trial court erred in granting custody credits to defendant in connection with his time in the electronic home monitoring program.

Custody credits are governed by Penal Code[2] section 2900.5, which was amended in 2011 to grant such credits for "days served in home detention pursuant to

---

[1] Defendant apparently signed a consent form agreeing to abide by the rules of the program, but we have not found a copy in the appellate record.

Section . . . 1203.018." (*Id.*, subd. (a); Stats. 2011, ch. 15, § 466, p. 480.) Section 1203.018 authorizes counties to "offer a program under which inmates being held in lieu of bail in a county jail or other county correctional facility may participate in an electronic monitoring program." (*Id.*, subd. (b).) The statute leaves the exact terms of the electronic monitoring program to the discretion of county authorities, but the program must require the inmate to "remain within the interior premises of his or her residence during the hours designated by the correctional administrator." (*Id.*, subd. (d)(1).) The statute also requires the inmate to execute a consent form agreeing to abide by the rules of the program. (*Id.*, subd. (d).) Although the record is vague, there appears to be no dispute the home detention program in which defendant participated was an electronic monitoring program established by Contra Costa County pursuant to section 1203.018.

The district attorney argues that, notwithstanding defendant's participation in a section 1203.018 electronic monitoring program, he was not entitled to custody credits because he did not qualify for participation in the program under the terms of section 1203.018, subdivision (c). That subdivision states, "In order to qualify for participation in an electronic monitoring program," a person in custody who has been charged with a felony must have "been held in custody pending disposition of charges for at least 60 calendar days from the date of arraignment." Failing that, "the correctional administrator" must have determined the inmate "is appropriate for the program" because "the inmate's participation would be consistent with the public safety interests of the community." (*Id.*, subd. (c)(1)(B), (C).)

Section 1203.18, subdivision (c) anticipates the participation in the electronic monitoring program of defendants who would otherwise be confined for failure to post bail. For defendant, in contrast, electronic monitoring was a condition of bail, rather than a substitute for it, and he appears not to have satisfied the conditions in subdivision (c).[3]

---

[2] All statutory references are to the Penal Code.

[3] There is no question defendant was not in custody for the requisite 60 days, and there is no evidence defendant was ever determined by a correctional official to be appropriate for the program.

Despite this, there was no showing that the terms and conditions of defendant's home detention were different in any way from those of participants who entered the program via subdivision (c). On the contrary, defendant appears to have been subject to the same rules and to have been required to execute the same consent form governing participation.

Simply as a matter of statutory interpretation, we are not wholly persuaded by the district attorney's argument. As noted, section 2900.5 grants custody credit for "days served in home detention pursuant to Section . . . 1203.018." (*Id.*, subd. (a).) The district attorney argues this language means that a defendant is entitled to custody credits on the basis of participation in an electronic monitoring program only if the defendant qualified for participation in the program under the terms of section 1203.018. There is, however, another, perhaps more reasonable, way to read the statute: a defendant is entitled to custody credits if he or she participated in an electronic monitoring program established "pursuant to section 1203.018." This would allow credits for all time served in the program, regardless of whether the defendant's inclusion in the program satisfied subdivision (c). From the point of view of custody credits, what is important is the defendant's home detention pursuant to a section 1203.018 program, not the manner in which the defendant came to participate in the program.

We need not decide which is the more appropriate interpretation, however, because we are required to adopt a construction covering defendant by application of the familiar principle that " 'a statute must be construed, if reasonably possible, in a manner that avoids a serious constitutional question.' " (*People v. Chandler* (2014) 60 Cal.4th 508, 524.)

Both below and on appeal, defendant challenged the denial of custody credits under the equal protection clause. "The basic guarantee of equal protection embodied in the United States and California Constitutions provides that the state cannot arbitrarily discriminate among persons who are subject to its jurisdiction by requiring that 'classifications between those to whom the state accords and withholds substantial benefits must be reasonably related to a legitimate public purpose.' [Citation.] When the equal protection issue involves fundamental interests, such as liberty, our courts have

4

required that the state establish that it has a compelling interest in making such classifications. [Citation.] These provisions have been applied to require that section 2900.5 credit be applied uniformly to all those convicted of felony offenses who are imprisoned for their offenses." (*People v. Lapaille* (1993) 15 Cal.App.4th 1159, 1168 (*Lapaille*).)

The county cannot grant custody credits to some participants in its electronic monitoring program and deny them to other participants unless the distinction between the two groups has, at a minimum, a reasonable relationship to a legitimate governmental purpose.[4] The district attorney claims custody credits were meant to equalize time served for indigent defendants confined while awaiting trial and those who were not confined because they were able to post bail. Because defendant was able to post bail, it is argued, he was not among those intended to benefit from custody credits. In focusing on the relative wealth of the defendants, the claim badly mischaracterizes the purpose of the statute. The object of custody credits is to equalize the effective sentences of persons who have been held in custody prior to sentencing and those not in custody. A defendant's wealth is irrelevant to the statute's purpose and implementation.

The 2011 amendment of section 2900.5 to include home detention constitutes a declaration by the Legislature that participation in an electronic monitoring program is sufficiently restrictive to be considered "custody." The nature of that detention is the same for participants who would otherwise be jailed and those who enter the program as a condition of bail. For that reason, the two groups are presumably entitled to the same credit toward their sentences. In the absence of any rational reason for distinguishing between them, we must interpret section 2900.5 to avoid the potential constitutional

---

[4] Decisions applying the equal protection clause in this context have suggested that strict scrutiny should be applied, thereby requiring a compelling state interest to justify distinctions, but they have not resolved the issue. (E.g., *Lapaille, supra,* 15 Cal.App.4th at p. 1168.) We also find it unnecessary to decide the issue because we conclude there is no rational basis for denying defendant custody credits under these circumstances.

5

infirmity by granting custody credits to all participants in section 1203.018 programs, regardless of whether the participant satisfied the qualification rules in subdivision (c).

The parties debate whether defendant's home detention constitutes "custody," relying on case law decided prior to the 2011 amendment of section 2900.5. (See, e.g., *People v. Anaya* (2007) 158 Cal.App.4th 608; *People v. Pottorff* (1996) 47 Cal.App.4th 1709.) *Anaya*, in particular, held that home detention did not constitute "custody," largely because the inclusion of a reference to home detention in section 2900.5, added in 1991 (see *Lapaille, supra*, 15 Cal.App.4th at pp. 1163–1164 & fn. 3), had been deleted by the time the defendant was detained. (*Anaya*, at p. 612.) Following the 2011 amendment, which restored the statutory reference to home detention, it is no longer necessary to determine whether home detention under an electronic monitoring program constitutes "custody" for purposes of section 2900.5. The Legislature has declared it so. Further, as noted above, once the Legislature made that determination, defendant could not be denied custody credits in the absence of a constitutionally sufficient reason. The district attorney has not suggested such a reason.

## III.  DISPOSITION

The judgment of the trial court is affirmed.

 

 

_____
Margulies, J.


We concur:


_____
Humes, P.J.


_____
Banke, J.